**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LABORERS' PENSION FUND,        ) <br> LABORERS' WELFARE FUND OF THE     ) <br> HEALTH AND WELFARE DEPARTMENT   ) <br> OF THE CONSTRUCTION AND GENERAL  ) <br> LABORERS' DISTRICT COUNCIL OF     ) <br> CHICAGO AND VICINITY, THE CHICAGO  ) <br> LABORERS' DISTRICT COUNCIL RETIREE ) <br> HEALTH AND WELFARE FUND,       ) <br> CATHERINE WENSKUS, not individually but ) <br> as Administrator of the Funds,      ) <br>                         ) <br>          Plaintiffs,     ) <br>     v.                ) <br>                         ) <br> SEWER RAT CONTRACTORS, LLC, an   ) <br> Illinois corporation and SEWER RAT   ) <br> UNDERGROUND, LLC corporation    ) <br>                         ) <br>         Defendants.   ) | Case No. 25 C4778 |

## COMPLAINT

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace, Amy Carollo, G. Ryan Liska, and Sara S. Schumann, and for their Complaint against Sewer Rat Contractors, LLC and Sewer Rat Underground, state as follows:

### COUNT I

### (Failure to Pay Benefit Contributions)

1.    Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2. Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3. The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4. Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5. Defendant Sewer Rat Contractors, LLC, (hereinafter collectively referred to as "Contractors") is an Illinois corporation and at all times relevant did business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6. Defendant Sewer Rat Underground, LLC, (hereinafter collectively referred to as "Underground") is an Illinois corporation and at all times relevant did business within this

District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

7.     Contractors and Underground agree that Underground is an alter ego/single employer of Contractors and is bound to the collective bargaining agreement with the Union.

8.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Contractors and Underground entered Independent Construction Industry Collective Bargaining Agreements which binds Contractors and Underground to all existing and successive area-wide Collective Bargaining Agreements, which went into effect on August 1, 2021 ("Agreement").   A copy of the Independent Construction Industry Collective Bargaining Agreements which adopt and incorporate the area-wide negotiated Collective Bargaining Agreements and also bind the Contractors and Underground to the Funds' respective Agreements and Declarations of Trust are attached hereto as Exhibit A.

9.     The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.  Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy

Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA" or collectively with all other funds identified in this Paragraph as "Ancillary Funds") to act as an agent in the collection of contributions due to those Funds.

10.     The Agreement and the Funds' respective Agreements and Declarations of Trust obligate Contractors and Underground to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which Contractors and Underground, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  Contractors and Underground are obligated to pay between 10%  and 20% liquidated damages on late-paid contributions including 20% liquidated damages on late-paid, Pension, Welfare, Retiree Welfare and Training Fund contributions, plus interest at a rate of 12% from the date the contributions were due until the contributions are paid.

11.     The Agreement and the Funds' respective Agreements and Declarations of Trust requires Contractors and Underground to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

12.     The Agreement requires the Contractors and Underground to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

13.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Contractors and Underground have:

(a)     failed to submit and/or pay benefit reports and contributions for the period of March 2024 forward, thereby depriving the Pension Fund of information and income necessary to administer the Fund;

(b)     failed to submit and/or pay benefit reports and contributions for the period of March 2024 forward, thereby depriving the Welfare Fund of information and income necessary to administer the Fund;

(c)     failed to submit and or pay benefit reports and contributions for the period of March 2024 forward, thereby depriving the Retiree Welfare Fund of information and income necessary to administer the Fund;

(d)     failed to submit benefit reports and contributions for the period of March 2024 forward, thereby depriving the Training Fund of information and income necessary to administer the Fund; and

(e)     failed to submit benefit reports and contributions for the period of March 2024 forward, thereby depriving the Ancillary Funds of information and income necessary to administer the Funds.

14.     Contractors' and Underground's actions in failing to submit timely payment of benefit contributions reports violates Section 515 of ERISA, 29 U.S.C. §1145.

15.     Contractors' and Underground's actions in failing to make timely reports and contributions violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185 and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

16.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Contractors and Underground are liable to the Funds for delinquent

contributions, liquidated damages, accumulated liquidated damages, interest, audit costs, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment in favor of the Plaintiffs and against Defendants Sewer Rat Contractors, LLC and Sewer Rat Underground, LLC as follows:

a.      ordering Sewer Rat Contractors, LLC and Sewer Rat Underground to submit and pay benefit and ancillary fund reports and contributions for the period of March 2024 forward;

b.      entering judgment in sum certain in favor of the Funds and against Contractors and Underground on the amounts due and owing pursuant to the delinquent reports/contributions, shortages, accumulated liquidated damages, interest, and liquidated damages;

c.      awarding Plaintiffs its reasonable attorneys' fees and costs; and

d.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Pay Union Dues)

17.     Plaintiffs reallege paragraphs 1 through 16 of Count I.

18.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

19.     Dues reports and contributions are due by the 10th day following the month in which the work was performed.  Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages.

20.    Notwithstanding the obligations imposed by the Agreement, Contractors and Underground failed to withhold and/or submit payment of dues for the period of March 2024 forward thereby depriving the Union of information and income.

21.    Pursuant to the Agreement, Contractors and Underground owe liquidated damages on all late or unpaid dues plus audit costs, and reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants Sewer Rat Contractors, LLC and Sewer Rat Underground, LLC ordering Contractors and Underground to submit their reports and payment of union dues for the period of March 2024 forward, enter judgment on all amounts owed together with all dues, liquidated damages and attorneys' fees and costs; and any other legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Failure to Submit to an Audit)

22.    Plaintiffs reallege paragraphs 1 through 16 of Count I.

23.    Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Contractors and Underground performed covered work during the time period of October 1, 2021 forward.  The Funds demanded an audit and Contractors and Underground failed to submit their books and records to an audit for the time period of October 1, 2021 forward, thereby depriving the Funds of information needed to administer the Funds and jeopardizing the benefits of the participants and beneficiaries.

24. Contractors' and Underground's actions in failing to timely submit reports and contributions violates Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

25. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, Contractor and Underground are liable to the Funds for delinquent contributions, liquidated damages, interest, and attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Sewer Rat Contractors, LLC and Sewer Rat Underground, LLC:

a. ordering Contractors and Underground to submit all books and records to an audit for the period of October 1, 2021 forward and entering judgment in sum certain in Plaintiffs' favor against Defendants Sewer Rat Contractors, LLC and Sewer Rat Underground, LLC for the amounts due on audit including unpaid contributions, interest, liquidated damages, accumulated liquidated damages on late-paid reports, audit costs, and Plaintiffs' attorneys' fees and costs; and

b. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT IV

### (Failure To Pay Union Dues)

26. Plaintiffs reallege and incorporate herein paragraphs 1 through 16 of Count I and paragraphs 17 through 21 of Count II.

27. Notwithstanding the obligations imposed by the Agreement, Contractors and Underground performed covered work during the time period of October 1, 2021 forward and

failed to submit its books and records to a requested audit to determine dues contributions compliance for the time period of October 1, 2021 forward, thereby depriving the Union of information.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants Sewer Rat Contractors, LLC and Sewer Rat Underground, LLC ordering Contractors and Underground to submit their books and records to an audit for the period of March 1, 2021 forward and entering judgment in favor of the Funds and against Defendants for the Union dues and liquidated damages owed together with all accumulated liquidated damages on late-paid reports, audit costs, attorneys' fees and costs, and any other legal and equitable relief as the Court deems appropriate.

May 1, 2025                                          Chicago & Vicinity Laborers' District Council
                                                    Pension and Welfare Funds,

                                                    By: /s/ Amy Carollo

Amy Carollo
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson, Suite 1415
Chicago, IL 60604
(312) 692-1497



# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Sewer Rat Contractor** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 8, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defense it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and trust documents creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and other Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: _4-14_ 20 _21_

ACCEPTED:

Laborers' Local Union No. _L.I.D.C_

By: _(signature)_

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _(signature)_
James P. Connolly, Business Manager

By: _(signature)_
Charles LoVerde, Secretary-Treasurer

For Office Use Only: _IM-IRTBA_

_Sewer Rat Contractors_

FEIN No.: _____

By: _Juana Reyes_  _President_
(Print Name and Title)

_Juana Reyes_
(Signature)

_2201 Melrose Ave_
(Address)

_Waukegan IL 60085_
(City, State and Zip Code)

_____
(Telephone/Telefax)

_____
(Email Address)

Effective June 1, 2017     WHITE - LOCAL UNION  •  CANARY - TRUST FUND  •  PINK - DISTRICT COUNCIL  •  GOLD - EMPLOYER

**Exhibit A**